UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

JAVIER GARCIA-RODRIGUEZ,

    Petitioner,

v.

UNITED STATES OF AMERICA,

    Respondent.

4:14-cv-174
4:13-cr-116-1

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Movant Javier Garcia-Rodriguez ("Garcia-Rodriguez") has filed a petition to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. CV ECF No. 1.[1] The Government filed a Response. CV ECF No. 3. Garcia-Rodriguez filed a Reply, as supplemented. CV ECF Nos. 4, 5, 13. The Government filed a Surreply. CV ECF No. 11. For the reasons set forth below, Garcia-Rodriguez's petition should be **DENIED**.

## STATEMENT OF THE CASE

On October 23, 2013, Garcia-Rodriguez pleaded guilty to transferring a sawed-off shotgun, in violation of 26 U.S.C. § 5861(e). CR ECF Nos. 102; 128.[2] After accepting Garcia-Rodriguez's plea, the Court sentenced him to 70 months' imprisonment. CR ECF No. 128. Then, on August 13, 2014, Garcia-Rodriguez filed a § 2255 motion alleging as grounds entitling him to relief that he received ineffective assistance of counsel and that his guilty plea was involuntary. CV ECF No. 1 at 4.

---

[1] Citations to CV ECF refer to docket entries in *Garcia-Rodriguez v. United States*, 4:14-cv-174.

[2] Citations to CR ECF refer to docket entries in *United States v. Garcia-Rodriguez*, 4:13-cr-116-1.

On January 22, 2015, United States Attorney Edward J. Tarver disclosed to the Court information regarding an "improper relationship" between Assistant United States Attorney ("AUSA") Cameron Ippolito and ATF Special Agent Lou Valoze. *In re Cameron Ippolito & Lou Valoze*, 2015 WL 424522, at *1 (S.D. Ga. Jan. 30, 2015). The Court ordered that the United States Attorney "submit a list of all cases . . . in which AUSA Ippolito and Agent Valoze collaborated." *Id.* Garcia-Rodriguez's criminal case was among those cases that the United States Attorney identified to the Court.

In the wake of this revelation, Garcia-Rodriguez sought leave to supplement his original § 2255 petition. CV ECF No. 7. The Court granted leave, CV ECF No. 9, and Garcia-Rodriguez supplemented his petition to incorporate further information related to Ippolito's and Valoze's relationship. CV ECF No. 10 at 2–3.

## DISCUSSION

Garcia-Rodriguez seeks relief on two separate grounds. First, he argues that his counsel at sentencing was ineffective for failing to discuss with him an appeal of his sentence, for failing to request a hearing to develop an entrapment defense, and for failing to inform him that other relevant conduct could be considered by the Court at sentencing. CV ECF No. 1 at 4. Second, he argues that the relationship between Ippolito and Valoze illuminates further misconduct that renders his guilty plea involuntary. CV ECF No. 10 at 2–3. None of Garcia-Rodriguez's arguments justify granting him relief.

### I.    Ineffective Assistance Claims

The United States Constitution grants to all criminal defendants the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 684–85 (1984). To prevail on a claim of ineffective assistance of counsel, the defendant must demonstrate (1) his

counsel's performance was deficient, i.e., the performance fell below an objective standard of reasonableness, and (2) he suffered prejudice as a result of that deficient performance. *Id.* at 685–86. The deficient performance requirement concerns "whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." *Hill v. Lockhart*, 474 U.S. 52, 56 (1985). "There is a strong presumption that counsel's conduct fell within the range of reasonable professional assistance." *Davis v. United States*, 404 F. App'x 336, 338 (11th Cir. 2010) (citing *Strickland*, 466 U.S. at 689). "It is petitioner's burden to 'establish that counsel [performed] outside the wide range of reasonable professional assistance' by making 'errors so serious that [counsel] failed to function as the kind of counsel guaranteed by the Sixth Amendment.'" *LeCroy v. United States*, 739 F.3d 1297, 1312 (11th Cir. 2014) (second alteration in original) (quoting *Butcher v. United States*, 368 F.3d 1290, 1293 (11th Cir. 2004)). "Showing prejudice requires petitioner to establish a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* (quotation marks omitted). "The prejudice prong requires a petitioner to demonstrate that seriously deficient performance of his attorney prejudiced the defense." *Id.* at 1312–13 (quoting *Butcher*, 368 F.3d at 1293).

### A. Failure to Consult Regarding an Appeal

Garcia-Rodriguez argues that his attorney was ineffective for failing to consult with him about the advantages and disadvantages of filing an appeal. CV ECF No. 1 at 8–10. Such a failure could constitute ineffective assistance. But Garcia-Rodriguez's attorney did in fact discuss an appeal with him.

"[A] lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." *Roe v. Flores-Ortega*, 528

U.S. 470, 477 (2000). Even if a client has not made a specific request of his attorney to file an appeal, "counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal . . . , or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id.* at 480. The denial of an appeal, as a result of ineffective assistance of counsel, deprives the accused of counsel at a "critical stage" and therefore carries a presumption of prejudice. *Id.* at 483. But "counsel's deficient performance must actually cause the forfeiture of the defendant's appeal." *Id.* at 484. Thus, to invoke the presumption of prejudice, "a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Id.* "[W]hen counsel's constitutionally deficient performance deprives a defendant of an appeal that he otherwise would have taken, the defendant has made out a successful ineffective assistance of counsel claim entitling him to an appeal." *Id.* "The duty to consult includes two obligations: to advise the client 'about the advantages and disadvantages of taking an appeal,' and to make a 'reasonable effort to discover' whether the client wants to appeal." *Baughman v. United States*, 319 F. App'x 866, 870 (11th Cir. 2009) (quoting *Flores-Ortega*, 528 U.S. at 478).

Here, Garcia-Rodriguez's attorney met his obligations. He discussed an appeal with Garcia-Rodriguez. CR ECF No. 123 at 3. The post-conviction consultation certification, which Garcia-Rodriguez signed, indicates that his attorney explained the consequences of not appealing and that he decided not to do so. *Id.* On his portion of that certification, Garcia-Rodriguez indicated that "My attorney has advised me about the advantages and

disadvantages of pursuing an appeal" and that "I have decided not to file an appeal, and my attorney has explained to me the consequences of failing to do so." Id. at 4.[3]

In response, Garcia-Rodriguez provides no evidence to support his contention that he timely instructed his attorney to file an appeal. Garcia-Rodriguez has failed to show that his attorney provided ineffective assistance since his attorney did advise him about the benefits and disadvantages of filing an appeal. Therefore, Garcia-Rodriguez should not be granted relief on this count.

### B. Failure to Request a Hearing on Entrapment

Garcia-Rodriguez also argues that his attorney was ineffective because he did not request an evidentiary hearing to allow the Court to determine whether Garcia-Rodriguez was entrapped by the Government. CV ECF No. 1 at 10–13. Garcia-Rodriguez's ineffective assistance claim is barred because it relates to conduct that occurred prior to his sworn guilty plea.

A defendant who enters an unconditional plea of guilty "may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred *prior* to the entry of the guilty plea." *Tollett v. Henderson*, 411 U.S. 258, 267 (1973) (emphasis added). That is, a "'plea of guilty, made knowingly, voluntarily, and with the benefit of

---

[3] The Court recognizes Garcia-Rodriguez's assertion that he did not sign the post-conviction consultation certification, and if such a waiver is in the record, his counsel "may have forged his signature, or may have tricked [him] into signing a document before sentencing without" any explanation. CV ECF No. 4 at 2. Garcia-Rodriguez contends the record shows he had a language barrier with his attorney, and it cannot be said he adequately consulted with his attorney. *Id.* While Garcia-Rodriguez did have the aid of an interpreter when he proceeded before the Court, the Honorable William T. Moore, Jr., observed during the Rule 11 hearing that, even though Garcia-Rodriguez was "proceeding today with an interpreter, it is the clear impression of the Court that [he] fully understands the Court's questions, and could more than likely complete this proceeding without the aid of an interpreter." CR ECF No. 168 at 20. Garcia-Rodriguez voiced no objection to Judge Moore's observation. In addition, this Report is replete with examples of Garcia-Rodriguez's assertions in this § 2255 proceeding being contradicted by the record in his criminal prosecution. *See, e.g.,* CR ECF No. 123.

competent counsel, waives all non-jurisdictional defects in that defendant's court proceedings.'" *United States v. Pierre*, 120 F.3d 1153, 1155 (11th Cir. 1997) (quoting *United States v. Yunis*, 723 F.2d 795, 796 (11th Cir. 1984)); *see also United States v. Patti*, 337 F.3d 1317, 1320 (11th Cir. 2003) (same). Thus, a § 2255 movant ordinarily may bring pre-guilty plea constitutional claims only by showing that the advice he received from his attorney undermined "the voluntary and intelligent character of the plea." *Tollett*, 411 U.S. at 267. Defenses, including the defense of entrapment, may not be raised after the defendant pleads guilty and swears under oath that he committed the crime with which he is charged. *See United States v. Baxley*, 402 F. App'x 461, 462 (11th Cir. 2010) (holding defendant waived entrapment defense by entering valid guilty plea); *United States v. Golden*, 284 F. App'x 646, 650 (11th Cir. 2008) (holding defendant waived right to appeal the district court's ruling on an entrapment defense by pleading guilty).

Here, Garcia-Rodriguez pleaded guilty. CR ECF No. 168. He testified under oath that he pleaded guilty because he was "in fact guilty." *Id.* at 20. He may not now claim that his right to present a defense was improperly taken from him. Garcia-Rodriguez can raise this kind of pre-guilty plea constitutional claim only if he demonstrates that his attorney's advice undermined "the voluntary and intelligent character of the plea" itself. *See Tollett*, 411 U.S. at 267. He has made no such claim here, and the record is clear that Garcia-Rodriguez's plea was knowing and voluntary. *See, e.g.,* CR ECF No. 168 at 21–22. Therefore, Garcia-Rodriguez should be granted no relief based on his claim that his attorney did not request an evidentiary hearing on a putative entrapment defense prior to the entry of his guilty plea.[4]

---

[4] Judge Moore informed Garcia-Rodriguez during his Rule 11 hearing that he may have defenses available to him, but he likely was waiving any defenses by pleading guilty. Garcia-Rodriguez

### C. Failure to Inform Regarding the Use of Relevant Conduct at Sentencing

Garcia-Rodriguez also argues that his attorney was ineffective for failing to inform him prior to sentencing that other relevant conduct could be taken into consideration by the sentencing judge. CV ECF No. 1 at 14–16. He argues that this renders his guilty plea involuntary, but the record demonstrates that he was fully informed prior to sentencing that all relevant conduct would be considered by the Court.

As part of his plea agreement, Garcia-Rodriguez was informed that "nothing in this agreement shall abrogate the duty and right of the government to bring to the attention of the sentencing court all sentencing facts [and] all relevant conduct of the defendant[.]" CR ECF Doc. 118 at 7. In addition, the plea agreement contained the following language:

> [Garcia-Rodriguez] understands that the U.S. Probation Office will prepare a presentence investigation report for the Court, and that the U.S. Probation Office will consider all of defendant's conduct related to the offense to which he is pleading, which may include conduct related to Counts of the Indictment which were or are to be dismissed or for which the defendant was acquitted, as well as the defendant's criminal history, and that these facts will be considered by the Court in determining the defendant's sentence. The defendant understands that the offense level and criminal history category determined by the United States Probation Office and the Court may differ from that estimated or projected by defendant's counsel or the United States Attorney.

*Id.* at 8. Garcia-Rodriguez signed this plea agreement, certifying that he read and understood it. *Id.* at 13; *see also* CR ECF No. 168 at 19 (testifying that his signature appeared on the plea agreement).

In addition, during the Rule 11 colloquy, the Court asked Garcia-Rodriguez whether he understood that even uncharged conduct could play a role in his sentence. CR ECF No. 168 at 14–15. Garcia-Rodriguez answered that he understood. *Id.* at 15. The Court then

---

stated that he understood. CR ECF No. 168 at 16. Garcia-Rodriguez also stated his attorney explained any possible defenses. *Id.* at 12.

7

asked his attorney whether he had explained this issue to his client, and he answered that he had. *Id.*

The record clearly demonstrates that Garcia-Rodriguez was informed that relevant conduct could be taken into account by the Court at sentencing, and he should not be granted relief on this count. Even if his counsel had rendered ineffective assistance by failing to inform Garcia-Rodriguez of the Court's use of relevant conduct during sentencing, he cannot show he inured any prejudice as a result of this alleged failure.

## II. The Confidential Informant

In his supplement to his § 2255 petition, Garcia-Rodriguez claims that governmental misconduct justifies relief. CV ECF No. 10 at 2. Specifically, Garcia-Rodriguez argues that, if he had known that the prosecutor and investigating agent were providing benefits to a confidential informant in exchange for his assistance, he would have gone to trial. *Id.* at 5–6. Garcia-Rodriguez asserts that he was unaware at the time he pleaded guilty that AUSA Ippolito and Agent Valoze were having an affair, which renders the entry of his plea involuntary because the attorney and the agent were guilty of outrageous misconduct and entrapment tactics. CV ECF No. 5 at 2–3; CV ECF No. 10 at 2.

The government's provision of benefits to a confidential informant and disclosure of information about AUSA Ippolito's and Agent Valoze's affair are useful to Garcia-Rodriguez only as impeachment evidence and has no bearing on Garcia-Rodriguez's guilt or innocence.[5] Because it is impeachment evidence, the Government had no obligation to

---

[5] The prosecution is required to turn over "evidence in its possession or control which could impeach the credibility of an important prosecution witness." *United States v. McAnalley*, 535 F. App'x 809, 814 (11th Cir. 2013) (internal citation omitted). In *Giglio v. United States*, 405 U.S. 150, 153 (1972), the Supreme Court addressed a particular subset of *Brady v. Maryland*, 373 U.S. 83 (1963), claims and held that, when the prosecution solicits or fails to correct known false evidence, due process requires a new trial where the false testimony could in any reasonable likelihood have

8

disclose it prior to Garcia-Rodriguez's plea. "[I]mpeachment information is special in relation to the *fairness of a trial*, not in respect to whether a plea is *voluntary* ('knowing,' 'intelligent,' and 'sufficient[ly] aware')." *United States v. Ruiz*, 536 U.S. 622, 629 (2002) (emphases in original). By pleading guilty, a defendant waives the right to a fair trial and the concomitant right to exculpatory impeachment material. *See id.* While information about the confidential informant or the prosecuting attorney's and agent's affair may have made Garcia-Rodriguez "more aware . . . of the likely consequences of a plea, waiver, or decision, . . . the Constitution does not require the prosecutor to share all useful information with the defendant." *Id.* All that the law requires for a knowing, intelligent, and sufficiently aware waiver of a right to a fair trial by way of a guilty plea is that "the defendant fully understand[ ] the nature of the right and how it would likely apply *in general* in the circumstances—even though the defendant may not know the *specific detailed* consequences of invoking it." *Id.* (emphases in original). In other words, "[a] plea is voluntary in a constitutional sense if the defendant receives real notice of the charge[s] against him and understands the nature of the constitutional protections he is waiving. In accepting a defendant's guilty plea, the district court must ensur[e] that a defendant (1) enters his guilty plea free from coercion, (2) understands the nature of the charges, and (3)

---

affected the judgment. *See Trepal v. Sec'y, Fla. Dep't of Corr.*, 684 F.3d 1088, 1107 (11th Cir. 2012) (summarizing the requirements of *Giglio*). "Thus, to prevail on a *Giglio* claim, a petitioner must establish that: (1) the government knowingly used perjured testimony or failed to correct what it subsequently learned was false testimony; and (2) such use was material." *Smith v. United States*, No. 14-15118, 2015 WL 5711330, at *2 (11th Cir. Sept. 30, 2015) (citing *Guzman v. Sec'y, Dep't of Corr.*, 663 F.3d 1336, 1348 (11th Cir. 2011)). Here, Garcia-Rodriguez fails to show that any impropriety at the hands of the Government affected his decision to plead guilty or otherwise affected the judgment of the Court.
AO72A
(Rev. 8/82)

understands the consequences of his plea." *United States v. Baez-Arrogo*, 553 F. App'x 922, 924–25 (11th Cir. 2014) (citations omitted) (first alteration supplied).

Further, even assuming, *arguendo*, that the Government's failure to disclose impeachment material in this instance is cause for constitutional concern,[6] Garcia-Rodriguez not only swore to the facts underlying the offenses to which he pleaded guilty, but he also swore to the accuracy of Agent Valoze's account of the events underlying the offenses to which he pleaded guilty. CR ECF No. 168 at 23–24. "[I]f the Rule 11 plea taking procedure is careful and detailed, the defendant will not later be heard to contend that he swore falsely." *United States v. Stizer*, 785 F.2d 1506, 1514 n.4 (11th Cir. 1986) (citing *United States v. Barrett*, 514 F.2d 1241, 1243 (5th Cir. 1975)); *see also United States v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988) ("[W]hen a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false.").

In light of the ample warnings from the Court during the plea colloquy regarding the consequences of pleading guilty, admitting the facts alleged in the indictment, and affirming that no one had done anything wrong or unfair to force him to plead guilty, the disclosure of impeachment material does not satisfy the heavy burden of asserting that Garcia-Rodriguez's statements made during that colloquy were false. *Cf. United States v. Hauring*, 790 F.2d 1570, 1571 (11th Cir. 1986) (concluding that, after entering a guilty plea, "any subjective belief" that the petitioner "would later be permitted to withdraw his plea and replead to a lesser charge was unjustified"). Therefore, the fact that the Government did not disclose potential impeachment material related to its confidential informant and the affair

---

[6] In *Ruiz*, Justice Thomas read the majority as "suggest[ing] that the constitutional analysis turns in some part on the 'degree of help' such information would provide to the defendant at the plea stage." *Ruiz*, 536 U.S. at 633 (Thomas, J., concurring).

AO72A
(Rev. 8/82)

10

between AUSA Ippolito and Agent Valoze prior to Garcia-Rodriguez's guilty plea does not entitle him to relief.

### III. Garcia-Rodriguez's Request for an Evidentiary Hearing

Garcia-Rodriguez has also requested an evidentiary hearing on his ineffective assistance claims. CV ECF No. 1 at 16. The Court recognizes that, in the Eleventh Circuit, the general rule is "that effective assistance claims will not be addressed on direct appeal from a criminal conviction because an evidentiary hearing, available in a section 2255 proceeding, is often required for development of an adequate record." *Vick v. United States*, 730 F.2d 707, 708 (11th Cir. 1984). Nonetheless, this general rule does not require the Court to hold an evidentiary hearing every time an ineffective assistance of counsel claim is raised. *Id.* Stated another way,

> [I]t is well settled that a petitioner does not establish his right to a hearing by the simple expedient of filing a petition. A hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations. Nor is a hearing required where the petitioner's allegations are affirmatively contradicted by the record.

*Stephens v. United States*, 14 F. Supp.2d 1322, 1334 (N.D. Ga. 1998) (quoting *United States v. Guerra*, 588 F.2d 519, 520–21 (5th Cir. 1979)).

As described in detail above, the Court finds Garcia-Rodriguez's claims are affirmatively contradicted by the record, procedurally barred, or otherwise fail as a matter of law. Accordingly, no evidentiary hearing is necessary in this case.

### CONCLUSION

Based on the foregoing, it is my **RECOMMENDATION** that Garcia-Rodriguez's motion to vacate, set aside, or correct his sentence, filed pursuant to 28 U.S.C. § 2255, be **DENIED.**

**SO REPORTED** and **RECOMMENDED**, this 6th day of October, 2015.

_____
JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

AO72A
(Rev. 8/82)